468 A.2d 808

**PENNSY SUPPLY, INC., Appellant,**

v.

**The NICHOLSON COMPANY.**

Superior Court of Pennsylvania.

Argued Dec. 15, 1981.

Filed Dec. 2, 1983.

Arthur Berman, Harrisburg, for appellant.

James F. Carl, Harrisburg, for appellee.

Before WICKERSHAM, BECK and POPOVICH, JJ.

POPOVICH, Judge:

This is an appeal from an order denying appellant's motion to modify or vacate an arbitration award. We reverse.

The appellant, Pennsy Supply, Inc. (hereinafter referred to as Pennsy), supplied transit-mixed concrete during the construction of an industrial storage silo at the Ralston Purina plant in Mechanicsburg, Pennsylvania. A problem arose during construction of the silo, causing a delay before construction could be resumed. As general contractor, appellee, The Nicholson Company (hereinafter referred to as Nicholson), absorbed the costs of the delay. Nicholson alleged that the cause of the delay was faulty concrete provided by Pennsy. Pennsy denied liability, and the parties agreed to have an arbitrator with engineering expertise resolve the dispute.

Hearings were held before an arbitrator on March 27 and 28, 1979, at which Pennsy and Nicholson each presented extensive technical evidence regarding the composition of the concrete mixture supplied by Pennsy. Although the hearings were closed on March 28, 1979, Nicholson sent the arbitrator a letter dated April 10, 1979, attached to which were two additional letters dated March 29, 1979 and April 6, 1979. The March 29 and April 6 letters were addressed to Nicholson's counsel and were signed by an expert witness who testified on behalf of Nicholson at the arbitration hearings. The letter of March 29 included a table and graph "showing the relationship of absorbences ... to reference concretes made with ... Plastocrete [concrete mixture], Plastocrete from Pennsy Supply ..., and concrete from the [storage bin which Nicholson was constructing]." (Excerpt from the letter of March 29, 1979.) The letter of April 6 contained the expert's "comments regarding the mechanisms by which greater than a normal dose ... of Plastocrete N could have occurred in the concrete furnished by Pennsy Supply.... The comments [were] based upon information made available during the arbitration hearing on March 27 and 28, 1979, and [an] analysis of Plastocrete obtained from Pennsy Supply during January...." (Excerpt from the letter of April 6, 1979.)

Nicholson sent copies of the above letters to Pennsy's counsel. In a letter to the arbitrator dated April 16, 1979, counsel for Pennsy wrote:

With this letter I must strongly object to [Nicholson's] submitting to you copies of letters ... received from [Nicholson's expert witness] ... dated March 29, 1979 and April 6, 1979. Neither of these were [*sic*] requested or solicited by you at the hearing. They were made post-hearing without the opportunity of cross-examination on the part of the other party and consequently we would view a submission of this nature and magnitude as a reprehensible act on the part of a participant in arbitration and we further strongly feel that this alone might be sufficient to effect the validity of a determination to be made by you in this proceeding. We also view this as a serious breach of ethical conduct in this arbitration proceeding.

As the record indicates that the arbitration proceedings were closed at the conclusion of the receipt of testimony, except for the information to be obtained from [a specified third-party chemical company], although we see errors and misrepresentations of [the Nicholson expert witness's] presentation [letters], we will not comment on the same.

On May 28, 1979, the arbitrator ruled that Pennsy and Nicholson were equally liable for the construction problems and should share the expenses incurred. Pennsy then filed its petition to vacate the arbitration award, and alleged that the award was invalid because of the presentation of *ex parte* evidence. The lower court found that although Pennsy objected to the arbitrator's *ex parte* receipt of the expert's letters, Pennsy had an affirmative duty to request that the arbitrator disregard the letters or re-open the proceedings to permit cross-examination as to the letters or the introduction of new evidence. The trial court held:

It may be true that receipt of *ex parte* evidence might be sufficient to vacate an arbitrator's award. "Parties to an arbitration may, however, by their words or actions, waive these otherwise guaranteed procedural protections." *Reisman v. Ranoel Realty Co.*, 224 Pa.Super. 220, 225, 303 A.2d 511, 514 (1973). While it was improper for Nicholson's counsel to submit the two expert letters,

Pennsy has failed to show through "clear, precise and indubitable evidence" that it was denied a fair hearing. *Kreisl et al. v. Varano et al.*, 46 Northum.L.J. 116, 121 (1974). Pennsy's failure to take any affirmative steps in clarifying the record requires us to affirm the Arbitrator's award. (Lower Court Opinion at p. 5).

Our review of the relevant case law indicates that although the lower court was correct in finding that Nicholson acted improperly in submitting the two expert letters to the arbitrator after the hearing had been closed, the trial court erred in holding that Pennsy waived its right to object to this procedural inequity.

 Nicholson argues that before a common law arbitration award can be overturned, it must be shown that there was actual fraud, involving collusion with one of the parties, or misconduct intended to create a fraudulent result.[1] (Brief for Appellee at p. 1, 4) (*quoting Mellon v. Travelers Insurance Co.*, 267 Pa.Super. 191, 195, 406 A.2d 759, 761 (1979)). However, we also said in *Mellon*, "it is indisputable that even in the absence of fraud or misconduct as those terms have been defined by *Runewicz v. Keystone Insurance Co., supra* [234 Pa.Super. 355, 338 A.2d 602 (1975)] a court may set aside an arbitration award if the parties were not accorded a fair hearing." *Mellon, supra,* 267 Pa.Superior Ct. at 196, 406 A.2d at 761. In *Mellon,* a panel of arbitrators awarded $20,000 to the appellee based on a theory not argued by the parties, but raised *sua sponte.* Appellants argued that the arbitrators' action in entering awards to appellee on claims never made denied them their due process right to a fair hearing, because they had no opportunity to make arguments or introduce evidence with respect to those claims. This Court agreed, finding that the arbitrators' action constituted an overt denial of due process. The basis for this holding was stated as follows:

1. Since the parties in the instant case did not specify the rules which would govern the arbitration proceeding, either in the arbitration agreement or in any subsequent agreement, common law rules control the enforcement of the arbitration award. *Weiss v. Zerman Realty and Construction Co.,* 214 Pa.Super. 180, 182, 251 A.2d 810, 811 (1969).

> Here, appellants were denied their right to notice, and so their right to be heard. They were never told that the panel might enter awards to appellee Denney on claims she never made. Consequently, they never marshalled such evidence nor prepared such arguments as they might have had against the claims.

*Id.*, 267 Pa.Superior Ct. at 197, 406 A.2d at 762.

Thus, a hearing had been held where evidence was presented by both sides in support of specific claims. When the award was entered on grounds not raised at the hearing, we found reversible error. The earliest Pennsylvania decision focusing directly on this issue is *Speer v. Bidwell*, 44 Pa. 23 (1863). In *Speer*, the parties agreed to submit the matter in dispute in writing to the arbitrators. The Supreme Court held that since there was no agreement that *ex parte* testimony might be taken to sustain the statement of either party, it was manifest error for the arbitrators to receive the unsworn declarations of an interested witness without the knowledge of the other party. "Mistakes they may have considered possible, and assumed the risk of them, but misconduct of the selected tribunal is a thing not anticipated, and therefore not waived by any agreement to submit to the award." *Id.*, 44 Pa. at 26.

In disposing of this case on the basis of waiver, the court below relied on *Reisman v. Ranoel Realty Co., supra.* In *Reisman*, this Court remanded for further hearings the lower court's affirmance of an arbitration award. The case arose out of a construction contract dispute. The parties proceeded to arbitration under the Pennsylvania Arbitration Act and under the Rules of the American Arbitration Association. A hearing was convened before the arbitration panel. Several witnesses testified, but shortly after appellee began to testify, and before there was an opportunity for appellant to cross-examine him or present its own witnesses, the parties agreed to narrow the issues by having counsel state each side's position in oral argument. After such argument, it was agreed that each side would submit a brief after which there would be a second meeting with the

panel in order to determine what witnesses and evidence would be necessary. A second hearing was held with only the arbitrators and counsel present. Appellee claimed, and the lower court found, that the parties agreed at this second meeting to allow the arbitrators to decide if a further evidentiary hearing was necessary. A few weeks after this second meeting, counsel for appellant requested a further hearing in order to cross-examine appellee and to present other witnesses in its defense. This request was refused and the hearing was later declared closed. We found that the record did not support a holding that appellant consented at the second meeting to an agreement amounting to a waiver of any further hearing. Accordingly, the case was remanded for a further hearing to determine if appellant consented to the closing of the hearings. In reaching this decision, we cited Rule 37 of the American Arbitration Association which provides that a party's continued participation in proceedings where the hearing panel may have acted in objectionable fashion without stating his objection in writing, bars a later complaint as to the misconduct of the arbitrators. Although *Reisman* arose under the Pennsylvania Arbitration Act, we specifically relied on *Curran v. Philadelphia*, 264 Pa. 111, 107 A. 636 (1919), for the common law rule that the party who asserts that such a waiver has taken place has the burden of showing words or conduct on the part of the opposing party indicating waiver.

In *Curran, supra,* a street cleaning contract called for an officer of the appellee, the City of Philadelphia, to be the arbitrator for questions concerning monies due. The appellant was not afforded a hearing or an opportunity to demand one prior to the rendition of the arbitrator's decision. Our Supreme Court held that although one may impliedly or expressly authorize an arbitrator to proceed in his absence, appellant's failure to demand a hearing prior to appealing the arbitrator's decision did not amount to waiver. The intent to confer upon an arbitrator the power to proceed *ex parte* must clearly appear. *Curran*, 264 Pa.Superior Ct. at 119, 107 A. at 639, 640. Since appellant did not assent to an *ex parte* hearing, the award was improper.

In the case *sub judice*, the only words submitted to the arbitrator after he received the experts' letters were in the form of a written objection to their admission by the appellant:

> [W]e would view a submission of this nature and magnitude as a reprehensible act on the part of a participant in arbitration and we further strongly feel that this alone might be sufficient to effect the validity of a determination to be made by you in this proceeding. We also view this as a serious breach of ethical conduct in this arbitration proceeding.

Although the above objection to the submission of the letters did not specifically suggest that the arbitrator disregard the letters, such a request could certainly be implied. More importantly, the written objection belies a showing of waiver under the common law standard announced in *Curran, supra*. That is, there are no words or conduct indicating consent to the close of the hearings after the *ex parte* receipt of evidence. The court below committed an error of law by placing upon Pennsy an affirmative duty to do more than object in writing to the *ex parte* evidence.

For the above stated reasons, we reverse the order of the court below and vacate the arbitrator's award.